UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11-cv-174-RLV
(3:02-cr-251-RLV-DCK-1)

| | | |
|---|---|---|
| ORAM TILLMAN DAVIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or

Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1), and on the Government's Motion

for Summary Judgment, (Doc. No. 8).

**I.    BACKGROUND**

1.  Procedural History

Petitioner Oran Tillman Davis was indicted on two counts of tax evasion, in violation of 26

U.S.C. § 7201, on November 6, 2002.  See (Case No. 3:02-cr-251, Doc. No. 1: Indictment).  A

jury trial began on November 17, 2003, with Richard A. Culler representing Petitioner, and a

mistrial was declared on November 24, 2003.  See (Id., docket entries for 11/17/03 through

11/24/03).  A new trial began on February 23, 2004, with Mr. Culler again representing

Petitioner, and Petitioner was found guilty on both counts on March 3, 2004.  See (Id., docket

entries for 2/23/04 through 3/3/04).  On April 26, 2006, a bench warrant was issued for Petitioner

after he failed to appear for sentencing.  See (Id., Doc. No. 60).  Petitioner was ultimately

arrested on September 18, 2007. <u>See</u> (<u>Id.</u>, Doc. No. 61).

On June 5, 2008, the Court entered its judgment, sentencing Petitioner to a total of 90 months of imprisonment. <u>See</u> (<u>Id.</u>, Doc. No. 69). Petitioner appealed, and the Fourth Circuit affirmed the convictions and sentence in an unpublished decision on March 10, 2010. <u>United States v. Davis</u>, 369 F. App'x 456 (4th Cir. 2010). Petitioner placed the instant motion in the prison mail system on March 7, 2011, and it was stamp-filed on April 11, 2011. In the motion, Petitioner asserts numerous claims, which may be categorized briefly as allegations, in the first six grounds, of various evidentiary and procedural errors by the Court. Petitioner's first six grounds are: 1) Ground One, that the Court erred in its evidentiary ruling prohibiting the parties from informing the jury at the second trial that there had been a previous trial that resulted in a hung jury; 2) Ground Two, that the indictment was insufficient; 3) Ground Three, that the Court erred in allowing the admission of FED. R. EVID. 404(b) evidence; 4) Ground Four, that the Court committed plain error in its jury instructions; 5) Ground Five, that the Court gave an improper and premature <u>Allen</u> charge; and 6) Ground Six, that the Presentence Investigation Report was inaccurate. <u>See</u> (Doc. No. 1 at 5-17).

In Ground Seven, Petitioner alleges ineffective assistance of counsel by Mr. Culler, citing counsel's failure to object to or otherwise prevent or correct those errors already alleged in the first six grounds. Petitioner also alleges that Mr. Culler failed to adequately examine a trial witness and that Mr. Culler's poor health impaired his ability to represent Petitioner effectively. (<u>Id.</u> at 19-20). In Ground Eight, Petitioner alleges ineffective assistance of appellate counsel by Mr. Lee, claiming that the <u>Anders</u> brief that Mr. Lee filed caused Petitioner to be "unjustly incarcerated for almost one year," depriving him of his due process rights. (<u>Id.</u> at 22). In Ground Nine, Petitioner alleges ineffective assistance of appellate counsel by Mr. Michel due to

2

his failure to raise certain issues on appeal.  (Id. at 24).  Finally, in Ground Ten, Petitioner appears simply to summarize his previous nine grounds.  (Id. at 26).

On May 16, 2012, the Government filed the instant, pending motion for summary judgment.  (Doc. No. 8).  On August 20, 2012, this Court entered an Order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of his obligation to file a response to the motion for summary judgment, and explaining the requirement that he present his own evidence by affidavit or unsworn declarations.  (Doc. No. 9).  On September 7, 2012, Petitioner filed his Response to the summary judgment motion.   (Doc. No. 10).

2. Offense Conduct

Petitioner owned a company known as Davis Press Repair, which was originally formed in Maryland as a sole proprietorship.  See (Criminal Case No. 3:02-cr-251, Doc. No. 81 at 152: Trial Tr.).  Petitioner first learned about "pure trusts" at a presentation put on by Commonwealth Trust Company in the early 1990s.  (Id. at 156-58).  Petitioner later discussed the "pure trust" concept with his then Certified Public Accountant, who warned him against using the trust and advised him of its clear illegality.  (Id. at 159-62).  Petitioner ignored his accountant's advice and created the trust.  (Id.).  Petitioner originally filed the trust in March of 1992, and he filed it in Union County, North Carolina in January 1994.  (Id. at 164).  The trust was named Prime Management Group, and Petitioner used it as a vehicle to conceal his Davis Press Repair earnings.  (Id. at 166-67).

Specifically, Petitioner created a management agreement purporting to be between Davis Press Repair and Prime Management Group, based on documents he had obtained from Commonwealth Trust Company.  This agreement was signed by Petitioner in April 1994.  (Id. at 168-70).  Davis Press Repair paid "consulting fees" to Prime Management Group, and then

Davis took those fees as deductible expenses on its tax return. (Id. at 172-74; 194). An Internal Revenue Service ("IRS") audit of Petitioner and his entities began in 1996. (Id. at 194). Petitioner received two requests for information from the IRS in September 1996. (Id. at 197-98). On October 30, 1996, Petitioner sent a letter to the IRS District Director, stating that Petitioner did not believe he was liable to file an income tax return. (Id. at 220). Petitioner subsequently met in person with IRS agents. (Id. at 202-03). In March 1997, Petitioner provided to the IRS a constructive notice, notice of mis-service, and warning of violation of law; all three documents related to his "pure trust." (Id. at 206). These documents were signed by Petitioner as "Managing Director" of Prime Management Group, and asserted that he was "only an employee of Prime Management Group and not one of the owners." (Id., Doc. No. 79 at 105-07). The total business and personal income tax loss suffered by the Federal and State governments as a result of Petitioner's actions was $1,879,967.23, exclusive of penalties and interest. See (Id., Doc. No. 85 at 5: Presentence Investigation Report ("PSR")).

3. Sentencing

Following his trial but before sentencing, Petitioner absconded supervision. (Id. at 3). Before being apprehended and brought back to this district, Petitioner spent "the better part of 15 or 16 months" as a fugitive, spending much of the time in Mexico. See (Id., Doc. No. 84 at 4; 9; 15: Sentencing Hrg. Tr.). On May 28, 2008, the Court sentenced Petitioner to 60 months' imprisonment on Count One and 30 months' imprisonment on Count Two, to run consecutively, and entered its judgment on June 5, 2008. See (Id., Doc. No. 69: Judgment).

4. The Direct Appeal

Petitioner filed a notice of appeal on June 8, 2008, and Mr. Culler was initially appointed to represent Petitioner in his appeal. See (Id., Doc. No. 70: Notice of Appeal; Fourth Circuit

4

Case No. 08-4621, Doc. No. 3). Three months later, the Fourth Circuit allowed Mr. Culler to withdraw and appointed Randolph Marshall Lee. See (Fourth Circuit Case No. 08-4621, Doc. No. 11). Mr. Lee filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), on February 3, 2009. See (Id., Doc. No. 22). Four months later, on June 3, 2009, the Fourth Circuit appointed Aaron Michel to replace Mr. Lee. See (Id., Doc. No. 35). Mr. Michel moved to strike the earlier Anders brief, which the Court granted. See (Id., Doc. No. 42; 44). Mr. Michel then filed a 42-page brief on Petitioner's behalf on September 30, 2009. See (Id., Doc. No. 51). As previously mentioned, the Fourth Circuit affirmed the conviction and sentence in an unpublished opinion dated March 10, 2010. United States v. Davis, 369 F. App'x 456 (4th Cir. 2010).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his

pleadings to defeat a motion for summary judgment.  Id. at 324.  The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party.  Anderson, 477 U.S. at 255.  "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmovingq party, there is no genuine issue for trial.'"  Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III.    DISCUSSION

As to Petitioner's first six grounds, which he attempts to raise as claims of ineffective assistance of counsel, Petitioner failed to raise these grounds on his direct appeal.  As a general rule, a claim of error that was not raised on direct appeal is procedurally defaulted and is not cognizable on collateral review because "[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal."  Bousley v. United States, 523 U.S. 614, 621 (1998) (internal quotations and citations omitted); see also United States v. Pettiford, 612 F.3d 270, 279 n.7 (4th Cir. 2010).  Where a defendant has procedurally defaulted a claim by failing to raise it on direct appeal, the claim is cognizable in habeas "only if the defendant can first demonstrate either 'cause' and actual 'prejudice' . . . or that he is 'actually innocent.'"  Bousley, 523 U.S. at 622 (citations omitted).

In order to show "cause" for a procedural default, the defendant must demonstrate that some objective factor external to the record impeded his counsel's efforts to bring a claim on direct appeal.  Murray v. Carrier, 477 U.S. 478, 497 (1986); Turner v. Jabe, 58 F.3d 924, 927

(4th Cir. 1995). It is not enough that counsel failed to present an argument that was unlikely to succeed; rather, cause only exists based on counsel's failure to present the claim if the claim "'is so novel that its legal basis was not reasonably available to counsel.'" Bousley, 523 U.S. at 622 (quoting Reed v. Ross, 468 U.S. 1, 16 (1984)). In attempting to avoid a procedural default based on the "actual innocence" exception to the default, a defendant must show, by clear and convincing evidence, United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999), that it is more likely than not that no reasonable juror would have convicted him because of his "factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623.

Here, Petitioner states that he was relying on his appellate counsel to raise these issues on direct appeal, but he offers no evidence to establish "cause and actual prejudice." This claim therefore overlaps to some extent with his allegation in Ground Nine that Mr. Michel was ineffective. As the Court discusses below, however, each of these six grounds fails on its merits. Therefore, the allegation that Mr. Michel was ineffective for raising these grounds in the direct appeal also fails on the merits.

A. Ground One

Petitioner first contends that before the second trial began, "the prosecution asked the Court to withhold the fact that [Petitioner] had a previous trial that ended in a hung jury." (Doc. No. 1-1 at 5). He argues that the Court's granting this request violated Petitioner's right of freedom of speech, as guaranteed by the First Amendment, and the Court thereby committed plain error. (Id.). This contention is without merit. First, as the Government notes, the trial transcripts do not appear to include any such request by the prosecution. In any event, regardless of whether the Court made such an evidentiary ruling, the Court acted properly and within its discretion, and there was no error, much less the plain error alleged by Petitioner. "A district

court is given broad discretion in its evidentiary rulings, which are entitled to substantial deference." United States v. Murray, 65 F.3d 1161, 1170 (4th Cir. 1995). A district court abuses its discretion only when acting "'arbitrarily or irrationally.'" United States v. Moore, 27 F.3d 969, 974 (4th Cir. 1994) (quoting United States v. Ham, 998 F.2d 1247, 1252 (4th Cir. 1993)). In addition to reviewing evidentiary rulings under an abuse of discretion standard of review, such rulings are also subject to harmless error review. United States v. Johnson, 587 F.3d 625, 637 (4th Cir. 2009). An error is harmless "if a reviewing court is able to 'say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'" Id. (quoting Kotteakos v. United States, 328 U.S. 750, 765 (1946)).

Petitioner's contention that his First Amendment rights were violated is without merit. The Court first notes that, where there has been a previous trial resulting in a hung jury or some other type of mistrial, courts routinely direct the parties not to inform the jury of that fact, and such evidentiary rulings have been upheld on appeal. See, e.g., United States v. Amato, 540 F.3d 153, 165 (2d Cir. 2008) (stating that, under FED. R. EVID. 403, the district court properly prohibited defense counsel from using cross-examination to inform jury of prior mistrial). Furthermore, it is well settled that constitutional rights, including freedom of speech, are not absolute. See Chaplinsky v. New Hampshire, 315 U.S. 568 (1942). Indeed, the Federal Rules of Evidence are limits, to some extent, on any otherwise absolute First Amendment rights of both a defendant and a prosecutor. For example, prohibitions against the introduction of hearsay, most lay opinions, certain expert opinions, speculation, and information regarding a defendant's prior convictions all limit the freedom of speech. In sum, Petitioner's Ground One is without merit.

B. Ground Two

Petitioner next contends that the indictment was fatally deficient by failing to inform him adequately of the charges against him. Here, one of the issues raised at trial was whether any of Petitioner's acts of tax evasion took place during the six years immediately before the indictment was returned, as required by the applicable statute of limitations, and the Government contended that several actions by Petitioner in March 1997, including his mailing of certain documents to the IRS, were affirmative acts of evasion occurring within the statutory time period. In his motion to vacate, Petitioner claims that if he "were aware that mailing of the documents had been identified as part of the offense, significant preparation would have been made in that area." (Doc. No. 1 at 7). He also argues that these documents were "used by the prosecution to circumvent the statute of limitations." (Id.).

Petitioner's contention is without merit. First, Petitioner raised the statute of limitations argument in his direct appeal, and the Fourth Circuit rejected that argument, stating "[b]ased on our review of the record, we find that [Petitioner's] last affirmative act of tax evasion occurred in March 1997, when he mailed documents misrepresenting his relationship with Prime Management Group to [the IRS agent]. [Petitioner] was therefore properly indicted within the statute of limitations." Davis, 369 F. App'x at 457. Issues that were previously decided on direct appeal may not be recast in the form of a Section 2255 motion. See United States v. Roane, 378 F.3d 382, 396 n.7 (4th Cir. 2004).

Moreover, a review of the record demonstrates that, at least by his second trial, Petitioner knew exactly what actions, including those in March 1997, "had been identified as part of the offense." See (Doc. No. 1-1 at 7). Before the first trial, Mr. Culler filed a motion on behalf of Petitioner to dismiss the indictment based on an alleged failure to comply with the six-year statute of limitations. In its opposition, the Government informed the Court and Petitioner that it

would present evidence of Petitioner's acts of evasion within the statutory period, including four acts that extended the statute of limitations. See (Doc. No. 7-1 at 4: Transcript of November 20 trial proceedings, Vol. IV). Later that same day, the Government and defense agreed to stipulate to these four "affirmative acts of evasion," as being "the alleged willful affirmative acts of tax evasion that extend[ed] the statute of limitations [as to] both counts." (Id. at 9; 10). The next day, in a discussion about jury instructions, Petitioner's attorney stated that he wanted to make sure the instructions made clear that the jury should only consider the four specific acts of evasion upon which the Government was relying and to which the parties had stipulated. See (Doc. No. 7-2 at 5: Transcript of November 21 trial proceedings, Vol. V). The Government relied on those four acts three months later in the second trial.[1] Petitioner's assertion that he did not know that the charged offense included the mailing of certain documents is simply not credible. In sum, Petitioner's Ground Two is without merit.

C. Ground Three

Petitioner next claims that the Court erred in admitting two different types of evidence pursuant to FED. R. EVID. 404(b). First, he complains about the admission of evidence of his failure to pay taxes during the years following those years for which he was charged and convicted. (Doc. No. 1 at 10). Second, he complains that the Court erred by allowing the Government to question his brother Brad Davis regarding an unrelated crime that Petitioner had committed. (Id.). As previously discussed, evidentiary rulings are committed to the sound discretion of the trial court, and the Fourth Circuit applies a harmless error analysis. Under Rule 404(b), evidence of a defendant's bad acts, though inadmissible to prove his character and

---

[1]   Indeed, as the Government notes, these four acts were explicitly made the subject of a set of four interrogatories in the verdict form for the second trial. See (Criminal Case No. 3:02-cr-251, Doc. No. 48).

"action in conformity therewith," may be admissible to prove "motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Thus, such evidence is admissible "if the evidence is (1) relevant to an issue other than the general character of the defendant; (2) necessary to prove an element of the charged offense; and (3) reliable."  United States v. Hodge, 354 F.3d 305, 312 (4th Cir. 2004).  Moreover, Rule 404(b) is an inclusive rule, "admitting all evidence of other crimes except that which tends to prove only criminal disposition."  United States v. Young, 248 F.3d 260, 271-72 (4th Cir. 2001).  It is not important that the other bad acts occurred after the conduct charged in the indictment.  See United States v. Mohr, 318 F.3d 613, 617 (4th Cir. 2003).  In other words, "[t]here is no distinction between 'prior' bad acts and 'subsequent' bad acts for the purpose of Rule 404(b), which speaks only of 'other' bad acts."  United States v. Lighty, 616 F.3d 321, 352 n.33 (4th Cir. 2010).

Here, the offenses charged required that the Government prove that Petitioner acted willfully, and Petitioner raised a "good faith" defense.  Thus, the Government used Petitioner's acts of evasion in the immediately ensuing tax years to prove willfulness and to rebut Petitioner's good faith defense.  In this situation, courts have recognized that evidence regarding evasion in other tax years is admissible.  See United States v. Daraio, 445 F.3d 253, 263-64 (3d Cir. 2006).  This is so regardless of whether the other years were before or after the years charged in the indictment.  See United States v. Johnson, 893 F.2d 451, 453 (1st Cir. 1990) (unindicted acts of tax fraud that occurred after the indicted acts were admissible in tax evasion prosecution to show intent and absence of mistake); United States v. Upton, 799 F.2d 432, 433 (8th Cir. 1986) ("Evidence of [defendant's] questionable compliance with tax laws, both in the years prior to and subsequent to [the years of the charged conduct] is probative of willfulness in the present context."); United States v. Ebner, 782 F.2d 1120, 1126 n.7 (2d Cir. 1986) ("The jury may

11

consider evidence of intent to evade taxes in one year as evidence of intent to evade payment in prior or subsequent years.").  Furthermore, during its final jury instructions, the Court gave a limiting instruction on the use of such evidence.  <u>See</u> (Criminal Case No. 3:02-cr-251, Doc. No. 82 at 149-50: Trial Tr., Vol. VI).  The Court did not abuse its discretion in admitting the evidence at issue.

Petitioner also complains in Ground Three that the Court erred by allowing the prosecution to question his brother Brad Davis about one of Petitioner's unrelated prior crimes. Near the end of the direct examination, Petitioner's attorney Mr. Culler asked Brad Davis if he knew of an incident in which Petitioner was arrested in Arkansas in 2002 or 2003 with some guns.  (<u>Id.</u>, Doc. No. 80 at 239: Trial Tr., Vol. IV).  When Mr. Davis said he did, counsel asked about some of the details, eliciting that Petitioner had purchased the guns for his son from his brother-in-law, who lived in that area.  (<u>Id.</u> at 239-40).  On cross-examination, the prosecutor followed up, asking whether Mr. Davis knew that Petitioner was convicted of a felony involving this incident, which Mr. Davis did know.  (<u>Id.</u> at 242).  Mr. Davis also testified that there had been a traffic stop or a traffic problem, and some guns were exposed or found.  (<u>Id.</u> at 243).

Petitioner's ineffective assistance of counsel claim is without merit.  Knowing that Petitioner was going to testify and that he would be subject to impeachment by evidence of his prior felony conviction, Fed. R. Evid. 609(a)(1), Mr. Culler made the reasonable, strategic decision to introduce this evidence to "remove the sting" before Petitioner testified.  In doing so, of course, he also opened the door to the Government's asking witnesses about their knowledge of that conviction and, if they were character witnesses, the Government could also examine them about their knowledge of specific instances of conduct, pursuant to Rule 608.

The record also shows that, in addition to this testimony, evidence was admitted about

this prior conviction through other witnesses. For example, Mr. Culler asked a defense witness, Walter Tucker, if he knew about the prior offense after Tucker opined that Petitioner was law-abiding. See (Id., Doc. No. 81 at 131). Mr. Tucker said he did, and that this did not change his opinion because he "felt like [Petitioner] made a mistake in having his son's guns in his car." (Id.). On cross-examination, Mr. Tucker reiterated his understanding that this prior offense was merely "a mistake of putting guns in his car." (Id.).

Where a defendant has "opened the door" by soliciting favorable opinions about his character or possession of certain character traits, this claim is "open to rebuttal by the government under Rule 404(a)(1), either by direct testimony of reputation, or . . . by inquiry on cross-examination into relevant instances of conduct." United States v. Moore, 27 F.3d 969, 974 (4th Cir. 1994); see also United States v. Wellons, 32 F.3d 117, 120 n.3 (4th Cir. 1994). The Court did not abuse its discretion in allowing such questioning. In sum, Petitioner's Ground Three is without merit.

D. Ground Four

Petitioner next contends that the Court's jury instructions were so confusing and unclear as to violate his right to a fair trial. (Doc. No. 1 at 12). Petitioner cites the Court's supplemental instructions to the jury regarding the verdict form and the interrogatories that they had to answer before considering guilt. As previously discussed, one of the major issues in this case was whether Petitioner had committed any act of evasion during the statute of limitations period. In the first trial, resulting in a hung jury, the verdict form had simply asked whether the jury unanimously found beyond a reasonable doubt that Petitioner "engaged in an affirmative act (or acts) of tax evasion on or after May 2, 1996?" See (Doc. No. 7-3: Verdict Form). Throughout the second trial, the parties focused on the particular acts upon which the Government would rely

to satisfy the statute of limitations, ultimately resulting in the stipulation concerning the four actions in March 1997 that has already been discussed. To help guide the jury through its deliberative process and to ensure that the jury found that the Government had proven one or more specific acts within the statutory period, the Court created a verdict sheet containing four interrogatories for each Count, setting forth the specific actions and calling for the jury to show its findings. <u>See</u> (Criminal Case No. 3:02cr251, Doc. No. 48: Jury Verdict). Both parties agreed to this form. <u>See</u> (<u>Id.</u>, Doc. No. 82 at 109).

In its primary set of jury instructions, the Court informed the jurors that they would have a verdict sheet, but the Court did not go into detail about the questions they would find on that sheet. (<u>Id.</u> at 165). During their deliberations, the jurors sent a note asking, "May a verdict be chosen based on the indictment? We are confused by the points on the verdict form." (<u>Id.</u> at 169). The Court observed that it found the note difficult to understand and proposed bringing the jurors in and asking them what their point of confusion was. (<u>Id.</u> at 169-70). Neither party objected to this proposal.

When the jury came back into the courtroom, the foreperson explained that the indictment "goes into much more detail than these four points here" on the verdict sheet, and that they were unsure why some things in the indictment were not included in those four points. (<u>Id.</u> at 170-71). By this, the foreperson was apparently referring to the omission from the verdict sheet's interrogatories regarding conduct that was cited in the indictment such as Petitioner's filing of the fraudulent individual and corporate tax returns in 1995 and 1996; the formation of Prime Management Group in 1993 and the transfer of funds to that entity in 1994; and Petitioner's use of those funds to make personal expenditures. The Court then provided the jury with thorough step-by-step instructions as to the purpose of the interrogatories, the manner in

14

which the jury was to work through the verdict form and record its answers, and the fact that the jury must determine whether the Government had proven these events beyond a reasonable doubt. (Id., Doc. No. 82 at 1172-73). When the Court asked if it was making progress in the direction the jury was considering, the foreperson answered, "I think so," and the Court then explained the process further, going into extensive detail in order to clarify this matter for the jury. (Id. at 172-77). At the end of this supplemental instruction, the Court made a humorous and self-deprecating remark (upon which Petitioner now seizes) that it hoped "that's not clear as mud," and the Court asked if these instructions had addressed what the jury was asking. (Id. at 177). The foreperson said, "I think so," and the Court noted "all affirmative nods." (Id.). The Court asked if the jurors wanted to go back and continue deliberations, and the foreperson said they needed a few more minutes. (Id.). The Court then gave a modified Allen charge. (Id. at 178-82). After the jury retired, the Court asked if either side had any objection to the Court's "effort to clear up the point of clarification or otherwise instruct the jury." (Id. at 182). The Government had no objections, and Petitioner's counsel objected only to the Allen charge. (Id. at 183). The jury did not send out any further notes before announcing it had reached a verdict.

The Fourth Circuit reviews a district court's jury instructions "holistically and through the prism of the abuse of discretion standard." Noel v. Artson, 641 F.3d 580, 586 (4th Cir. 2011). "[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge . . . . Accordingly, we simply determine whether the instructions construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." Id. (citations and quotation marks omitted); accord United States v. Abbas, 74 F.3d 506, 513 (4th Cir. 1996) ("The decision of whether to give a jury instruction and the content

of an instruction are reviewed for abuse of discretion."); <u>United States v. Bostian</u>, 59 F.3d 474, 480 (4th Cir. 1995) (stating that the question is whether the court's charge as a whole "'adequately instructed the jury on the elements of the offense and the accused's defenses'") (quoting <u>United States v. Fowler</u>, 932 F.2d 306, 317 (4th Cir. 1991)).

Petitioner fails to identify any way in which the Court's additional instructions to the jury failed to inform the jury of controlling legal principles, or were confusing or misleading. The record demonstrates that the supplemental instructions were thorough and accurate in describing for the jury the process it must go through in answering the factual interrogatories and then proceeding, if necessary, to the question of guilt on each of the two counts. There was nothing confusing here, the Court did not abuse its discretion in giving these instructions, and Petitioner was not prejudiced by them. In sum, Petitioner's Ground Four is without merit.

D. Ground Five

Petitioner next asserts that the jury deliberation was tainted because the Court gave the <u>Allen</u> charge before the jury had indicated any deadlock. <u>See</u> (Doc. No. 1 at 15). Here, the Court gave the charge after the jury had submitted the note asking about the verdict form, stating: "I realize your note essentially went to a question or a point of confusion that you had and I tried to answer that. But as long as you were in here, I thought I would go ahead and give you what amounts to all the instructions I can give you by adding to you a little more about the duty to deliberate." (Criminal Case No. 3:02cr251, Doc. No. 82 at 182). A district court's decision to give an <u>Allen</u> charge and the content of that charge are reviewed for an abuse of discretion. <u>United States v. Cropp</u>, 127 F.3d 354, 359 (4th Cir. 1997). Although the "traditional" <u>Allen</u> charge included a provision requiring only that the minority reconsider the majority's position, <u>United States v. Russell</u>, 971 F.2d 1098, 1107 n.18 (4th Cir. 1992), the

Fourth Circuit has "expressed a preference for a more balanced charge," United States v. Burgos, 55 F.3d 933, 936 (4th Cir. 1995), that instructs both the majority and the minority factions of the jury. United States v. Stollings, 501 F.2d 954, 955-56 (4th Cir. 1974). The Fourth Circuit endorses "a simple rule" that "the majority and minority on a deadlocked jury be instructed to give equal consideration to each other's views." Burgos, 55 F.3d at 937 (quoting United States v. West, 877 F.2d 281, 291 (4th Cir. 1989)). "Thus, the principal concern that we have had with Allen charges is to ensure that they apply pressure to the jury in a way that preserves all jurors' independent judgments and that they do so in a balanced manner." United States v. Hylton, 349 F.3d 781, 788 (4th Cir. 2003).

Here, the Court's instructions met the standards established by the Fourth Circuit. See (Criminal Case No. 3:02cr251, Doc. No. 82 at 179-80). Indeed, Petitioner does not challenge the correctness of the Allen charge itself. Rather, he contends it was given prematurely. The district court "has considerable discretion and is in the best position to gauge whether a jury is deadlocked or able to proceed further with its deliberations." United States v. Cabrera-Beltran, 660 F.3d 742, 754 (4th Cir. 2011) (quoting United States v. Seeright, 978 F.2d 842, 850 (4th Cir. 1992)). The Fourth Circuit has quoted approvingly the Second Circuit's language in United States v. Martinez, 446 F.2d 118, 120 (2d Cir. 1971), that "we [will] not place an arbitrary time limit on how long a jury must deliberate before an Allen charge is appropriate." United States v. Blacknell, 27 F. App'x 154, 155 (4th Cir. 2001). Furthermore, there is no requirement that a court may only give an Allen instruction once the jury has clearly stated that it is deadlocked. The Court here did not give the Allen charge prematurely. Even if the Court gave the Allen charge prematurely, however, Petitioner has not shown that the charge had any coercive effect on the jury verdict. In sum, Petitioner's Ground Five is without merit.

F. Ground Six

In the final PSR, revised on July 25, 2006, Petitioner's offense level pursuant to U.S.S.G. §§ 2T1.1 and 2T4.1 was determined by the total tax loss. (Criminal Case No. 3:02cr251, Doc. No. 85 at 6: Presentence Investigation Report ("PSR")). The PSR calculated this loss by including Petitioner's taxes for 1993 through 2001, based on his corrected taxable income totals. See (Id. at 5; 6). The base offense level was 20, and the PSR added two levels for the use of sophisticated means and two more levels for obstruction of justice, based on Petitioner's providing false information to investigators. (Id. at 6). Petitioner's criminal history was Category II, and the PSR concluded that his advisory guideline range was therefore 57 to 71 months. (Id. at 8; 11).

At the sentencing hearing, the Court overruled Petitioner's objections to the tax loss computation and adopted the PSR's findings and conclusions, placing Petitioner in the 50-71 month range. (Id., Doc. No. 84 at 10). The Government moved for an upward departure based on an understated criminal history, because Petitioner had not only evaded taxes for 1994 and 1995, but also for 1996 through 2002, and he had even continued to file false tax returns after he was indicted. (Id. at 11-12). The Government argued that his appropriate criminal history should be Category V. (Id. at 13). Additionally, the Government moved for an upward departure based on obstruction of justice, which had not been taken into account in the PSR— that is, Petitioner's fleeing to Mexico after his conviction and his lengthy period as a fugitive. (Id. at 14). Petitioner opposed the motion for upward departure based on criminal history, asserting that the offense level had already gone up dramatically based on the substantial tax loss from the years other than 1994 and 1995, and that it would be impermissible "double counting" to use those additional years also to increase the offense level. (Id. at 18-23).

18

Based on Petitioner's failure to file tax returns for the additional years, the Court granted the Government's departure motion under U.S.S.G. § 4A1.3 based on an understated or inadequate criminal history category, although it departed to a lesser extent than the Government requested, increasing the criminal history by one category, to Category III. (Id. at 26). The Court also granted the departure motion for obstruction of justice, based on Petitioner's absconding to Mexico, increasing the offense level by two levels. (Id. at 26-27). This resulted in a final offense level of 26, a criminal history of Category III, and an advisory sentencing range of 78 to 97 months. (Id. at 27). The Court also noted that the extent of its upward divergence was "minimal" – just two offense levels and one criminal history category –"which are relatively small in percentage terms of departure." (Id. at 28). The Court ultimately imposed a sentence toward the middle of that range, consisting of the statutory maximum 60 months on Count One and an additional 30 months on Count Two, to be served consecutively. (Id. at 32-33).

Petitioner now argues that the PSR violated his constitutional rights by including uncharged conduct--his tax evasions in several years after the two years for which he was tried and convicted--in the computation of his offense level. (Doc. No. 1 at 17). The law is well settled, however, that sentencing courts may consider uncharged or even acquitted conduct. See United States v. Watts, 519 U.S. 148, 156 (1997) (per curiam); United States v. Mercer, 242 F. App'x 932, 934 (4th Cir. 2007) (per curiam) (holding that the sentencing court's consideration of acquitted conduct violated neither the Fifth nor the Sixth Amendment).

Petitioner also argues that the Court committed double counting and violated the Double Jeopardy Clause by using Petitioner's other years of tax evasion to calculate his offense level, and then also using that conduct to determine that his criminal history was understated and that an upward departure was warranted. (Doc. No. 1 at 17). It is well-settled that "double counting

is permissible under the [federal sentencing] guidelines except where it is expressly prohibited." United States v. Crawford, 18 F.3d 1173, 1179 (4th Cir. 1994). Thus, the same conduct may be considered under more than one guideline unless the guidelines specifically forbid it. See United States v. Byers, 100 F. App'x 139, 141 (4th Cir. 2004). Moreover, prior offenses may be considered both in determining the offense level and the criminal history category. See United States v. Royal, 16 F.3d 413 (4th Cir. 1994).

Here, the Court relied on specific provisions in the guidelines that allow what the Court did at sentencing. First, U.S.S.G. § 1B1.3 states that all relevant conduct should be considered in determining the offense level, and U.S.S.G. § 4A1.3(a)(1) states that an upward departure may be warranted if reliable information indicates that a defendant's criminal history category substantially under-represents the seriousness of his criminal history. The Court also did not violate the Double Jeopardy Clause, which "protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717 (1969). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, 459 U.S. 359, 366 (1983). As long as the Sentencing Commission intended the type of enhancements and adjustments imposed by the sentencing court, as is the case here, there is no violation of the Double Jeopardy Clause. See United States v. Williams, 954 F.2d 204, 208 (4th Cir. 1992). In sum, Petitioner's Ground Six is without merit.

G. Ground Seven

In Grounds Seven, Eight, and Nine, Defendant alleges ineffective assistance of counsel by trial counsel Mr. Culler and by appellate counsels Mr. Lee and Mr. Michel. The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has

the right to the assistance of counsel for his defense.  See U.S. CONST. amend. VI.  To show

ineffective assistance of counsel, Petitioner must first establish a deficient performance by

counsel and, second, that the deficient performance prejudiced him.  See Strickland v.

Washington, 466 U.S. 668, 687-88 (1984).  In making this determination, there is "a strong

presumption that counsel's conduct falls within the wide range of reasonable professional

assistance."  Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010).

Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief

under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'"

Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364,

369 (1993)).  Under these circumstances, the petitioner "bears the burden of affirmatively

proving prejudice."  Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008).  If the petitioner fails

to meet this burden, a "reviewing court need not even consider the performance prong."  United

States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d

310 (4th Cir. 2000).

　　　In his seventh ground, Petitioner alleges that in one of his first meetings with Petitioner

after being retained, Mr. Culler told Petitioner that he had a back problem and that Culler

discussed with Petitioner's wife her back problems and the medications that she was taking.  See

(Doc. No. 1 at 19).  Petitioner also alleges that a few weeks after the trial his wife told him that

she had given Mr. Culler various pills during the trial at his request.[2]  (Id.).  Petitioner asserts that

Mr. Culler displayed a pattern of behavior consistent with chronic pain and addiction to

medication, causing him to render ineffective assistance.  (Id.).  As proof of such ineffectiveness,

Petitioner refers to an incident in which the Court corrected Mr. Culler several times on the

---

[2]  It is unclear whether Petitioner is referring to the first or second trial.

proper way to examine a witness, and finally "severely reprimanded" Mr. Culler and wrote out

the words "Who, What, When, Where" on a card and handed it to Mr. Culler, causing him "to

lose the respect and credibility of the jury." (Id.). Additionally, Petitioner claims that Mr. Culler

was so distracted with a need to call his doctor's office during the second trial that he failed to

enter objections to jury instructions. (Id. at 20). Petitioner also alleges, as proof of Mr. Culler's

ineffectiveness, that Mr. Culler failed to object to the supposed errors as alleged in Grounds One

through Six of the petition. (Id. at 19-20).

Petitioner's ineffective assistance of counsel claim against Mr. Culler fails. First, as for

the failure to object to alleged errors by the trial court as set forth in Petitioner's Grounds One

through Six, as the Court has already discussed, there is no merit to Grounds One through Six.

As for Mr. Culler's supposed pain- and drug-impaired performance during trial, first, although

Petitioner purports to have been disturbed by Mr. Culler's supposed addiction and his alleged

close questioning of Petitioner's wife about her pain medications shortly after entering into the

case, the fact is that Petitioner nonetheless continued to retain Mr. Culler. Moreover, after

observing Mr. Culler's performance during the first trial, Petitioner was apparently sufficiently

satisfied with Mr. Culler to continue to retain him for the second trial. Indeed, Petitioner

continued to be sufficiently satisfied with Mr. Culler and his performance, even after the second

trial of which he now complains, that in December 2007, after Petitioner had been apprehended

in Mexico and was finally returned to Charlotte, he told the Court at an inquiry-of-counsel

hearing that he wanted the Court to appoint Mr. Culler to continue to represent him. See

(Criminal Case No. 3:02cr251, Doc. No. 83 at 9 ("I think he knows more about my case than

anyone else, that he would be the best person to appoint.").

As to the incident in which the Court supposedly "severely reprimanded" Mr. Culler for

his conduct of a witness examination during the second trial, the transcript shows that the Court sustained numerous objections to leading questions both by counsel for the Government and by Mr. Culler.  See, e.g., (Id., Doc. No. 77 at 35; Doc. No. 78 at 155; Doc. No. 80 at 695; 703; 717 (same)).  The particular incident to which Petitioner apparently refers occurred during the direct examination of Petitioner's wife Regina Davis.  Mr. Culler was questioning her about a power-of-attorney form and asked her: "And did you have any concern that you had a problem with respect to a power of attorney?"  (Id., Doc. No. 81 at 61).  The Government objected, the Court sustained the objection, and Mr. Culler rephrased the question, leading to this exchange:

Q. When did you – well, strike that.
Was there a point when you learned that there was a problem –
THE COURT: Sustained.
Q. When did you –
THE COURT: You can ask her what problem.
Q. When –
THE COURT: Who, what, when, where.
Q. When – when did you learn that there was a problem with
respect to any –
THE COURT: No sir, that's leading. You can ask her what
the problem was.
(Id.).

Mr. Culler then requested a side-bar conference, during which he explained what he intended to elicit from the witness, and the Court explained the proper formulation of possible questions to accomplish this goal.  (Id. at 62-63).  After the mid-morning recess that immediately followed this side-bar, Mr. Culler resumed his examination of Ms. Davis with no further difficulties.  (Id. at 63-64).  The record, then, does not support Petitioner's version of events. First, the Court had repeatedly admonished all counsel for their difficulties in framing questions properly, so nothing about this exchange was likely to cause Mr. Culler to lose credibility with the jury.  Second, this exchange was far from a "severe reprimand" of an attorney by the Court.

Third, nothing in the record shows that the Court wrote words in block letters and handed them to Mr. Culler in front of the jury. In sum, the facts simply do not support Petitioner's allegation that he was prejudiced by his counsel's alleged incompetency in examining witnesses and that the Court severely reprimanded counsel.

As to the allegation that Mr. Culler was in such a rush to call his doctor's office that he failed to object to jury instructions, the record shows, in fact, that Mr. Culler devoted considerable time to the topic of jury instructions, including submitting proposed instructions; participating in discussions concerning the instructions; and objecting to certain proposed instructions. See (Criminal Case No. 3:02cr251, Doc. No. 47: Proposed Jury Instructions; Doc. No. 80 at 152-56; Doc. No. 82 at 91-92; 93-110; 147-49; 79; 80; 102; 105-06; 107; 133). Petitioner points to a statement made by Mr. Culler immediately after the Court had instructed the jury for the first time and had sent the twelve members to begin deliberating, while keeping the two alternates in the courtroom. See (Doc. No. 82 at 166). Mr. Culler then mentioned that he was checking his "list," which was apparently his list of admitted exhibits. After the Court thanked the two alternate jurors and excused them, and the clerk returned to the courtroom, Mr. Culler made the statement now cited by Petitioner: "The only reason I'm rushing at all is I have to make a call to my doctor's office before 3:30 when they close." (Id. at 167-68). He then explained that he had all his exhibits and copies, and that they were prepared and ready, but he hoped to be excused for a few minutes to make the call. (Id.). The Court consented, noting that this checking of exhibits could have been done off the record, and instructed Mr. Culler to go make his call. (Id.). Sometime after this colloquy, the jury sent out the note asking whether a verdict may be chosen based on the indictment. (Id. at 169). Mr. Culler and the Court then discussed the note and the supplemental instructions the Court proposed giving. (Id. at 169-70).

After the Court gave those additional instructions and a modified <u>Allen</u> charge, Mr. Culler

objected to the <u>Allen</u> charge portion. (<u>Id.</u> at 183). There is simply no evidence in the record that

Mr. Culler was in any way deficient in his attention to jury instructions. In particular, Mr.

Culler's desire to call his doctor's office after the instructions did not result in his failure to make

appropriate objections to those instructions. In sum, Petitioner's Ground Seven is without merit.

H. Ground Eight

Petitioner next alleges that his first-appointed appellate counsel, Randolph Marshall Lee,

was constitutionally ineffective because he filed an <u>Anders</u> brief. (Doc. No. 1 at 22). Petitioner

argues that, as a result of that brief and, then, the appointment of another appellate counsel, he

was "unjustly incarcerated for almost one year." (<u>Id.</u>). This contention is without merit, as Mr.

Lee's performance was not deficient, nor did Petitioner suffer any prejudice. Appellate counsel

is permitted wide latitude in determining which claims are most likely to succeed on appeal and

are therefore worth bringing. <u>See</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 751-54 (1983); <u>Fisher v. Lee</u>,

215 F.3d 438, 457 (4th Cir. 2000). Counsel is not required to assert all non-frivolous issues on

appeal. <u>See</u> <u>Jones</u>, 463 U.S. at 751-52. As the Court has already discussed, Petitioner has

identified no errors from the trial that would justify the setting aside of his conviction or

sentence. Mr. Lee was not deficient for failing to make those frivolous arguments, and

Petitioner's "almost one year" of incarceration that elapsed during Mr. Lee's representation was

a year that he would have been serving in any event, because there were no reversible errors in

his trial and sentence. In sum, Petitioner's Ground Eight is without merit.

I. Ground Nine

Petitioner next alleges that his second appellate counsel, Aaron Michel, was

constitutionally deficient for failing to include in his brief various issues that Petitioner had

identified for him. (Doc. No. 1 at 24). Petitioner has attached to his petition an email he sent to Mr. Michael identifying these issues that he wanted raised, which include: double jeopardy and the fact that the Court did not inform the second jury about the first trial; the statute of limitations issue; the allegation that Mr. Culler was using pain medications that affected his performance; and the reference at trial to Petitioner's prior Arkansas gun conviction. (Doc. No. 1-4 at 1). Mr. Michel raised three issues on appeal: 1) the statute of limitations; 2) the sufficiency of the evidence; and 3) that the indictment was deficient for failing to set forth the precise amount of taxes that Petitioner sought to evade. Davis, 369 F. App'x at 457-58. As for the remaining issues that Petitioner identified to Mr. Michel, those issues were meritless, as already discussed, and Mr. Michel was therefore not deficient in failing to raise them. Finally, there was no prejudice since none of these omitted issues, as identified by Petitioner, would have merited reversal. In sum, Petitioner's Ground Nine is without merit.

J. Ground Ten

Finally, in Ground Ten, Petitioner simply sets forth a list of the nine preceding grounds, adding no new allegations or grounds for relief. Thus, Petitioner's Ground Ten is without merit.

**IV.    CONCLUSION**

For the reasons stated herein, the Court will dismiss the Section 2255 petition and grant the Government's motion for summary judgment.

**IT IS, THEREFORE, ORDERED** that:

1.    Petitioner's Section 2255 motion to vacate, (Doc. No. 1), is **DENIED** and **DISMISSED**. To this extent, the Government's Motion for Summary Judgment, (Doc. No. 8), is **GRANTED**.

2.      Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court

declines to issue a certificate of appealability as Petitioner has not made a

substantial showing of the denial of a constitutional right.  28 U.S.C. §

2253(c)(2); <u>Miller–El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to

satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find

the district court's assessment of the constitutional claims debatable or wrong).


Signed: September 24,

Richard L. Voorhees
United States District Judge